# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| ISGN CORPORATION, | |
| Plaintiff, | |
| v. | Civil Action No. 1:10-cv-00019 |
| STERLING TECHNOLOGY SOLUTIONS, LLC, a Florida corporation, 3M, a New York Corporation, RONALD MORGAN, MICHAEL SCHIFF, MEYER CHETRIT, and MARK EBNER, individually, | [JURY TRIAL DEMANDED] |
| Defendants. | |

## AMENDED COMPLAINT

Plaintiff ISGN Corporation ("ISGN"), files this Amended Complaint against Defendant Sterling Technology Solutions, LLC ("Sterling"), Defendant 3M Corporation ("3M"), Defendant Ronald Morgan ("Morgan"), Defendant Michael Schiff ("Schiff"), Defendant Meyer Chetrit ("Chetrit") and Defendant Mark Ebner ("Ebner") (collectively, "Defendants"), stating as follows:

<u>NATURE OF THE ACTION</u>

1.

Morgan is a former employee of ISGN, a software company.  After leaving ISGN, Morgan, along with Schiff, Chetrit and Ebner founded Sterling, also a software company.  Together, all Defendants have maliciously and intentionally acted to steal, copy, and make unauthorized use of ISGN's proprietary information, including ISGN's trade secrets, copyrighted software, technical documentation, and related materials (collectively, "ISGN Proprietary Information"), and to falsely advertise the ISGN Proprietary Information as their own.  Additionally, through their unlawful conduct, Morgan has breached contractual employment agreements with ISGN and Sterling has breached a software license agreement with ISGN.  Defendants have also improperly acted to unfairly obtain ISGN's potential and existing contractual customer relationships for themselves.  During the course of this litigation, Schiff, Chetrit and Ebner founded 3M and thereafter purchased Morgan's assets and liabilities in Sterling, despite this Court entering a temporary restraining order against Morgan and Sterling which prevented them from transferring or selling any assets at issue in this litigation.   Through this lawsuit, ISGN seeks damages and injunctive relief from Defendants' wrongful actions under federal, state, and common law.

PARTIES

2.

Plaintiff ISGN is a Pennsylvania corporation with its principal place of business at 3220 Tillman Drive, Suite 301, Bensalem, Pennsylvania 19020.  ISGN develops and provides software products and related services to the mortgage industry to support all aspects of lending.

3.

Defendant Sterling is a Florida corporation that has registered with the Georgia Secretary of State and is qualified to transact business in Georgia. Sterling may be served with process through its registered agent in Fulton County, Georgia: Business Filings Incorporated, 1201 Peachtree Street, N.E., Atlanta, Georgia 30361.  Sterling provides default technology and home retention services. These services are designed to help homeowners who are having difficulty paying their mortgages, or are in default under their mortgages, to retain their homes.

4.

Defendant Morgan is an individual who, upon information and belief, resides at 7025 Country Road 46A, Suite 1701, Lake Mary, Florida 32746, and may be served with process at that address.  Morgan is the President of Sterling.

5.

Defendant 3M, upon information and belief, is a New York corporation that was formed by former Sterling investors and board members Schiff, Chetrit and Ebner.  3M's principal place of business, upon information and belief, is located at 404 5th Avenue, New York, NY 10018-7508.  Upon information and belief and based upon prior conversations with Schiff, Schiff, Chetrit and Ebner, 3M may be served at 404 5th Avenue in New York.

6.

Defendant Schiff is an individual who, upon information and belief, resides in the state of Ohio, but may be served at 404 5th Avenue, New York, New York, 10018-7508.  Upon information and belief, Schiff is a former board member and investor of Defendant Sterling and is also a founding member and corporate officer of 3M.

7.

Defendant Chetrit is an individual who, upon information and belief, resides in New York and may be served with process at the Chetrit Group building in New York, located at 404 5th Avenue, New York, New York, 10018-7508.  Upon information and belief, Chetrit is a former board member and investor of Defendant Sterling and is also founding member and corporate officer of 3M.

8.

Defendant Ebner is an individual and a representative of 3M who can be served at 404 5th Avenue, New York, New York, 10018-7508. Upon information and belief, Ebner is a former board member and investor of Defendant Sterling and is also a founding member and corporate officer of 3M.

## JURISDICTION AND VENUE

9.

This Court has original jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1338(b).

This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 in that (i) ISGN is a citizen of Georgia with its principal place of business in Georgia; (ii) Sterling is a citizen of Florida with its principal place of business in Florida; 3M is a citizen of New York with its principal place of business in New York; (iii) Morgan is a citizen of Florida; Schiff is a citizen of Ohio; Chetrit is a citizen of New York and (iv) the amount in controversy exceeds $75,000, exclusive of interest and costs.

10.

This Court has supplemental jurisdiction under 28 U.S.C. § 1367 because ISGN's state and common law claims against the Defendants arise out of the same case or controversy that give rise to ISGN's federal claims.

11.

Personal jurisdiction over Sterling is proper in this forum because Sterling maintains a registered agent in this forum and regularly transacts business in this forum.  Personal jurisdiction over Morgan is proper in this forum under O.C.G.A. § 9-10-91 because he has transacted business in this forum and has engaged in tortious acts and injuries to ISGN in this forum.  Personal jurisdiction over 3M is proper in this forum because, under O.C.G.A. § 9-10-91, 3M has engaged in tortious acts and injuries to ISGN in this forum and because 3M has violated this Court's Temporary Restraining Order.  [DE 18].  Personal jurisdiction over Schiff is proper in this forum because he has engaged in tortious acts and injuries to ISGN in this forum and because he has violated this Court's Temporary Restraining Order.  [DE 18].  Personal jurisdiction over Chetrit is proper in this forum under O.C.G.A. § 9-10-91 because he has transacted business in this forum, has engaged in tortious acts and injuries to ISGN in this forum and has he violated this Court's Temporary Restraining Order.  [DE 18]..  Personal jurisdiction over Ebner is

proper in this forum because he has engaged in tortious acts and injuries to ISGN in this forum and because he has violated this Court's Temporary Restraining Order. [DE 18].

12.

Venue is also proper in this district under 28 U.S.C. § 1391 because Sterling is subject to personal jurisdiction in this district, because this is the judicial district where a substantial part of the events or omissions giving rise to this claim occurred and because the license agreement between Sterling and ISGN mandates that all actions are to be brought in this judicial district.

## DEFENDANTS' WRONGFUL ACTS

13.

ISGN owns and holds full right, title, and interest in copyrighted software called FORTRACS for managing foreclosure, bankruptcy, loss mitigation, claims, and REO applications.

14.

ISGN, at all times, made reasonable efforts to maintain the secrecy of the ISGN Proprietary Information, including the FORTRACS software and technical documentation, by way of employee confidentiality clauses, software license agreements, and through other physical and technological confidentiality measures.

ISGN derives great economic benefit and competitive advantage by keeping this intellectual property secret from the general public.

15.

ISGN purchased FORTRACS from a company called Fair Isaac Corporation ("Fair Isaac").  Morgan was an employee of Fair Isaac at the time of the purchase and was, in part, responsible for the development of FORTRACS.

16.

Morgan later became an employee of ISGN, and at that time he executed a New Employee Checklist, which specifically states:

> All right, title, and interest, including, without limitation, all copyrights and patents, in and to any material produced or inventions developed by me which affect or relate to the Company's business or affect or relate to the Company's industry shall vest in the Company and I shall have no personal right, title, or interest whosoever therein.
>
> * * * *
>
> I agree not to disclose any of the Company's trade secrets or other confidential or restricted information and not to make use of such trade secrets or confidential or restricted information in any fashion during employment or after my employment with the Company is terminated.

A true and correct copy of this "New Employee Checklist" is attached hereto as Exhibit "A".

17.

Morgan also executed an Employment Agreement, which sets forth the relevant rights and responsibilities of ISGN and Morgan.  Paragraph 5 of the Employment Agreement is entitled "CONFIDENTIALITY" and states:

> Employee acknowledges that he/she may have access to the Employer's confidential and proprietary information.  Such confidential and proprietary information may include, without limitation, i) business and financial information, ii) business methods and practices, iii) technologies and technological strategies, iv) marketing strategies and other such information as the Employer may designate as confidential ("Confidential Information").  Employee agrees to not disclose to any other person (unless required by law) or use for personal gain any Confidential Information at any time during or after the termination of employment, unless Employer grants express, written const of such a disclosure.  In addition, Employee will use his/her best efforts to prevent any such disclosure. Confidential information will not include information that is in the public domain, unless such information falls into public domain through Employee's unauthorized actions.

A true and correct copy of the Employment Agreement is attached hereto as Exhibit "B".

18.

Morgan resigned from ISGN on September 26, 2008, and later founded Sterling with Schiff, Chetrit and Ebner.  On November 13, 2008, Sterling entered into a Software License and Services Agreement ("FORTRACS License") with ISGN, whereby it licensed ten (10) copies of the FORTRACS software from

ISGN.  A true and correct copy of this Software License and Services Agreement is attached hereto as Exhibit "C".

19.

The FORTRACS License granted Sterling certain rights in the licensed program and stated, in Section 1.1:

> Customer may make a reasonable number of copies of the Licensed Programs solely for backup/disaster recovery purposes.  Customer may not make any other copies without the prior written consent of ISGN.  All titles, trademarks, copyright and proprietary rights notices shall be reproduced in such copies.  All copies of the Licensed Programs are subject to the terms of this Agreement.

20.

The FORTRACS License also lists certain restrictions and states, in Section 1.2, the following:

> Except as otherwise expressly provided in this Agreement, Customer shall not: (i) reproduce, prepare derivative works based upon, distribute copies of, perform, display, make, use, or sell the Licensed programs or the Documentation except as otherwise specified in this Agreement; (ii) reverse engineer, disassemble, or decompile the Licensed Programs; (iii) use the Licensed Programs for third-party training, commercial time-sharing, out-sourcing, rental, or service bureau use, or (iv) assign, sub-license, lease, transfer, or rent the Licensed Programs.

21.

Nevertheless, upon information and belief, Defendants intentionally altered the licensed FORTRACS software to allow approximately thirty (30) additional,

unauthorized, Sterling employees to use FORTRACS, in violation of the FORTRACS License.

22.

Sterling has also failed to pay ISGN the full license fee owed under the FORTRACS License. Sterling presently owes ISGN $34,500, along with sales tax and late fees on that amount.

23.

Because of Sterling's failure to pay, ISGN terminated the FORTRACS License. Upon information and belief, however, Sterling continued to use the FORTRACS software after termination of the license without authorization.

24.

Additionally, Morgan, Schiff, Chetrit and Ebner claim that after found Sterling, they developed a new loss mitigation software called OLYMPUS. Upon information and belief, OLYMPUS is an infringing copy of ISGN's copyrighted FORTRACS software and/or has been unlawfully developed and marketed using the ISGN Proprietary Information. Defendants falsely advertise OLYMPUS as Sterling's proprietary software.

25.

In particular, upon information and belief, the application programs used by, and the screen images produced by, the infringing software are substantially similar to, and in may cases identical to, the application programs and screen images of ISGN's copyrighted FORTRACS software.

26.

In addition, Sterling and/or 3M released and, with the help of Morgan, Schiff, Chetrit and Ebner are marketing a new loss mitigation program called TOUCHPOINT, which Sterling states was developed by Morgan during 2007. Morgan was an employee of ISGN during 2007. Upon information and belief, Defendants improperly utilized ISGN Proprietary Information to develop and market TOUCHPOINT. Morgan's participation in this wrongful conduct also constitutes a flagrant breach of his Employment Agreement and the New Employee Checklist.

27.

Defendants marketed the infringing software on the website: www.sterlinghomeretention.com.

28.

Moreover, ISGN has learned that all Defendants have maligned ISGN and have made false representations about ISGN and its products and services, in an attempt to obtain ISGN's potential and existing contractual customer relationships.

29.

Defendants have directed, ratified, participated in, and financially benefited from Sterling's illegal efforts.

30.

Based on the above relevant allegations, ISGN filed a Complaint alleging copyright infringement, violations of the Digital Millennium Copyright Act, trade secret misappropriation, breach of contract, breach of license, conversion and civil conspiracy against Defendants Sterling and Morgan.  [DE 1].

31.

ISGN effected service upon Sterling on January 6, 2010.  [DE 4].

32.

ISGN could not serve Morgan, ([DE 10] (Exhibit J),) but was contacted by Hughes & Bentzen, PLLC, who purported to represent Sterling and Morgan.  (Id. (Exhibit G).)  Hughes & Bentzen, PLLC purported to accept service on behalf of

Sterling and Morgan in exchange for an extension until February 3, 2010 to respond to ISGN's Complaint.  (Id. (Exhibit G).)  Hughes & Bentzen, PLLC also agreed, purportedly with the Defendants' permission, to enter into an Asset Preservation Agreement.  (Id. (Exhibit H).)  Hughes & Bentzen, PLLC never filed a Response to ISGN's Complaint by March 18, 2010 and instead informed ISGN on March 8, 2010 that Hughes & Bentzen, PLLC no longer represented Morgan or Sterling, could not accept service on the Defendants behalf and was unsure whether the Defendants would honor the Asset Preservation Agreement.  (Id. (Exhibit I).)

33.

After the breakdown of the Asset Preservation Agreement and attorney involvement on behalf of the Defendants, Morgan filed an Answer to ISGN's Complaint on March 24, 2010 [DE 8] though he never filed an entry of appearance and he claimed that he was not properly served.

34.

ISGN was then forced to file a Motion for Alternate Service to effect service upon Morgan via publication, which was filed on May 5, 2010.  [DE 37]. Accordingly, based on the Defendants unwillingness to participate in the litigation, ISGN could not effect service upon Morgan until May 27, 2010.  [DE 40].

35.

Sterling has yet to file an Answer and the clerk entered a default against Defendant Sterling on May 17, 2010.  [DE 39].

36.

On or about March 2010, ex-Sterling Chief Operating Officer Stephen Benetz informed ISGN that the Defendants actively were attempting to sell Touchpoint, and other assets, to another company[1] [DE 13]  and Morgan may have hidden service of the Complaint from other officers and directors of Sterling at the time it was served.  [DE 13].

37.

As a result, ISGN sought an emergency Motion for a Temporary Restraining Order ("TRO") against the Current Defendants.  [DE 10].  This Court granted the Motion and entered a TRO against Morgan and Sterling on April 9, 2010, preventing, *inter alia*, the Morgan and Sterling from assigning, licensing, sub-licensing or selling, either directly or indirectly, the rights to or source code and related proprietary information in any of ISGN's software.  [DE 18].

---

[1] See [Doc. 13 at ¶ 13].

38.

On April 9, 2010, this Court entered an Expedited Discovery Order requiring that all answers to discovery must be provided within ten (10) days of receipt of the discovery request.  [DE 19].

39.

Pursuant to Local Rule 26.2(A), discovery will end on August 23, 2010. [DE 34].

40.

On April 28, 2010, ISGN propounded written discovery requests, particularly Requests for Admissions, Interrogatories and Requests for Production of Documents, to be responded to within ten (10) days, pursuant to this Court's Expedited Discovery Order.  [DE 19].  In addition, on April 28, 2010, ISGN filed a Notice of Deposition seeking the testimony of a corporate designee of Sterling. This deposition was to take place on May 7, 2010, at the offices of Arnall Golden Gregory, in Atlanta, Georgia.  Morgan and Sterling failed to respond to any of ISGN's discovery requests[2] and Morgan, Sterling, Schiff, Chetrit, Ebner and a

---

[2] Morgan did, in fact, later file responses to ISGN's Request for Admissions, but these responses were filed after the thirty-day deadline set forth in this Court's Expedited Discovery Order and amounted to nothing more than conclusory denials of the claims against him.

corporate designee from Sterling failed to appear for their scheduled depositions,

thus preventing ISGN from gathering information regarding its claim and parties,

prior to this Court's May 24, 2010 deadline to add parties.

41.

After the imposition of the TRO, Schiff contacted ISGN to discuss the

possibility of lifting the TRO against Sterling in exchange for a copy of

TOUCHPOINT and profit-sharing in the software.

42.

Thereafter, ISGN began corresponding with, Chris Sabbe ("Sabbe"), an

employee of Sterling.  To date, ISGN has met with Schiff and Sabbe on several

occasions to view demonstrations of TOUCHPOINT and to discuss settlement.

[Id.].  During these meetings and through subsequent correspondence, ISGN

learned that Morgan sold his interests in Sterling to Schiff, Chetrit, Ebner and 3M.

As a result, Morgan was bought out of Sterling, so as to eliminate any liability.

[Id].

43.

Schiff, Chetrit, Ebner and 3M knew of Morgan's and Sterling's wrongful acts

of stealing, copying and making unauthorized use of ISGN's Proprietary

Information.  Schiff, Chetrit, Ebner and 3M also knew of this Court's TRO

imposed against Sterling and Morgan, preventing the sale or transfer of any intellectual property at issue in this litigation, but disregarded the Court's Order and purchased the intellectual property, anyway.

44.

Upon information and belief, Schiff, Chetrit and Ebner created 3M with the knowledge of Morgan's and Sterling's infringing activities and for the purposes of: (1) purchasing Morgan's assets and liabilities in the intellectual property at issue as a way to bypass and in violation of this Court's TRO imposed upon them; (2) continuing to engage in infringing activity, in violation of this Court's TRO imposed upon them; and (3) removing Morgan from Sterling so as to eliminate any liability that may exist against Defendant Morgan.

COUNT I:  COPYRIGHT INFRINGEMENT
AGAINST ALL DEFENDANTS

45.

ISGN incorporates by reference each of the foregoing allegations as though fully set forth herein.

46.

The FORTRACS software, including the screen images generated by the FORTRACS software, are works of authorship protected by the Copyright Act of

1976, 17 U.S.C. § 101, *et seq*., and ISGN owns all right, title, and interest in the FORTRACS software.

47.

Prior to bringing this action, ISGN filed a copyright application with the United States Copyright Office for the FORTRACS software.

48.

Defendants willfully and in bad faith made unauthorized reproductions of the copyrighted FORTRACS software and used those reproductions in their business operations.

49.

Defendants willfully and in bad faith copied the FORTRACS software to generate the OLYMPUS software, which is substantially similar to and, in many cases, nearly identical to, the FORTRACS software and screen images generated by it. Defendants then marketed, sold, and distributed the infringing OLYMPUS software to others.

50.

Morgan, Schiff, Chetrit and Ebner had the right and ability to supervise Sterling's and/or Morgan's infringement, had a financial interest in that

infringement, and/or directed, controlled, ratified, participated in, or was the moving force behind that activity, and are personally liable therefore.

51.

Defendants' actions constitute copyright infringement under 17 U.S.C. § 501 *et seq.*

52.

ISGN is entitled to recover any and all damages resulting from Defendants' infringement of ISGN's copyrighted FORTRACS software, as well as Defendants' profits from the infringing activity, pursuant to 17 U.S.C. § 504.

53.

ISGN is entitled to recover all costs of this action, including its reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

54.

Further, Schiff's, Chetrit's, Ebner's and 3M's continued infringement of ISGN's copyrighted FORTRACS software will irreparably harm ISGN. Therefore, this Court should temporarily and permanently enjoin Schiff's, Chetrit's, Ebner's and 3M's copying, marketing, sale, use, and/or distribution of any

infringing software substantially similar to ISGN's copyrighted FORTRACS software, pursuant to 17 U.S.C. § 502.

55.

ISGN is also entitled to a pre-judgment seizure and impoundment of the infringing software, including its destruction, as well as any and all copies of the infringing software, pursuant to 17 U.S.C. §503(a) and §503(b).


## COUNT II:  VIOLATION OF DIGITAL MILLENNIUM COPYRIGHT ACT AGAINST ALL DEFENDANTS

56.

ISGN incorporates by reference each of the foregoing allegations as though fully set forth herein.

57.

Sterling, Morgan, Schiff, Chetrit and Ebner intentionally circumvented technological measures and altered the copyrighted FORTRACS software to allow approximately thirty (30) additional, unauthorized, Sterling employees to use FORTRACS.  Sterling's, Morgan's, Schiff's, Chetrit's and Ebner's actions constitute a violation of 17 U.S.C. § 1201(a).

58.

Sterling, Morgan, Schiff, Chetrit and Ebner have also acted to falsify, remove and/or alter the copyright management information found in the FORTRACS software.  Sterling, Morgan, Schiff, Chetrit and Ebner did so with the knowledge and intent to induce, enable, facilitate, and conceal their infringement of the FORTRACS software.  Their actions constitute a violation of 17 U.S.C. § 1202.

59.

Morgan, Schiff, Chetrit and Ebner had the right and ability to supervise Sterling's infringement, had a financial interest in this infringement, and/or directed, controlled, ratified, participated in, or was the moving force behind that activity, and are personally liable therefore.

60.

3M violated 17 U.S.C. 1202 when it purchased the FORTRACS license from Sterling and/or Morgan, knowing that the licenses' copyright management information had been removed and/or altered to allow Morgan to unlawfully create thirty (30) additional licenses to use FORTRACS.

61.

Sterling's, Morgan's, Schiff's, Chetrit's Ebner's and 3M's actions have resulted in severe damage to ISGN in an amount to be determined at trial or, in the alternative, in the statutory amount of $2,500 for each violation of 17 U.S.C. § 1201 and in the statutory amount of $25,000 for each violation of 17 U.S.C. § 1202, as allowed by 17 U.S.C. § 1203(c).

62.

Further, Sterling's, Morgan's, Schiff's, Chetrit's, Ebner's and 3M's actions have continued the infringement of the FORTRACS software will irreparably harm ISGN.    Therefore, this Court should temporarily and permanently enjoin Defendants from any further infringement in violation of the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201 and 1202.

## COUNT III:  TRADE SECRET MISAPPROPRIATION
## AGAINST ALL DEFENDANTS

63.

ISGN incorporates by reference each of the foregoing allegations as though fully set forth herein.

64.

The ISGN Proprietary Information, including the FORTRACS Software, include ISGN's protectable trade secrets.

65.

Defendants have knowingly acted to misappropriate those trade secrets, and have used those trade secrets to develop, market, and distribute Sterling's and 3M's infringing OLYMPUS and TOUCHPOINT software.

66.

Morgan, Schiff, Chetrit and Ebner had the right and ability to supervise Sterling's infringement, had a financial interest in this infringement, and/or directed, controlled, ratified, participated in, or was the moving force behind that activity, and are personally liable therefore.

67.

3M knowingly misappropriated ISGN's trade secrets when it purchased Sterling's intellectual property from Morgan, in violation of this Court's TRO.

68.

Defendants are, therefore, in violation of both the Georgia Uniform Trade Secrets Act, O.C.G.A. § 10-1-760 *et. seq.*, and common law.

69.

Defendants' misappropriation of ISGN's trade secrets has resulted in severe damage to ISGN in an amount to be determined at trial.

70.

Further, Defendants' continued misappropriation of ISGN's trade secrets will irreparably harm ISGN. Therefore, this Court should temporarily and permanently enjoin Defendants from any further misappropriation of ISGN's trade secrets.

## COUNT IV: BREACH OF CONTRACT
## AGAINST MORGAN

71.

ISGN incorporates by reference each of the foregoing allegations as though fully set forth herein.

72.

ISGN and Morgan entered into the terms identified by the New Employee Checklist and the Employment Agreement in exchange for valuable consideration. See Exhibits "A" and "B".

73.

Morgan breached the New Employee Checklist and the Employment Agreement, including, but not limited to, their confidentiality and intellectual property obligations, by directing, ratifying, or otherwise participating in the following unlawful acts: (a) reproducing and using unauthorized copies of the FORTRACS software in Sterling's business; (b) using and copying the

FORTRACS software to create the infringing OLYMPUS software; (c) taking, using, and reproducing ISGN Proprietary Information, including ISGN trade secrets, to assist Sterling in creating the TOUCHPOINT software; (d) marketing and distributing Sterling's infringing software products.

74.

Additionally, pursuant to the New Employee Checklist, the Employment Agreement, and established law, Morgan was contractually obligated to assign full right, title, and interest in the TOUCHPOINT software to ISGN, which was developed by Morgan while he was an employee of ISGN. Morgan materially breached those agreements by taking the TOUCHPOINT software with him when he left ISGN and by providing that software to Sterling.

75.

Morgan's actions also constitute a breach of his duty of good faith and fair dealing implied in his contractual employment agreements with ISGN.

76.

Morgan's breach of his agreements with ISGN has resulted in severe damage to ISGN in an amount to be determined at trial, and Morgan should be required to disgorge any profits that Morgan and/or Sterling derived from the sale or licensing of the TOUCHPOINT software.

77.

Further, Morgan's continued breach of the employment agreements will irreparably harm ISGN. Therefore, this Court should temporarily and permanently enjoin Morgan from any further and continuing breach of those agreements and order Morgan to relinquish all interest in the TOUCHPOINT software and deliver that software and any related documentation and materials to ISGN.

## COUNT V:  BREACH OF FORTRACS LICENSE
## AGAINST ALL DEFENDANTS

78.

ISGN incorporates by reference each of the foregoing allegations as though fully set forth herein.

79.

At all relevant times, Defendants were bound by the terms of the FORTRACS License. See Exhibit "C".

80.

Defendants materially breached the FORTRACS License by intentionally altering the copyrighted FORTRACS software to allow approximately thirty (30) additional, unauthorized, Sterling employees to use FORTRACS.

81.

Defendants have also materially breached the FORTRACS License by failing to pay ISGN $34,500 of the full license fee owed, along with sales tax and late fees on that amount.

82.

Defendants have also materially breached the FORTRACS License by, upon information and belief, continuing to use the FORTRACS software after the License was terminated.

83.

Defendants' actions also constitute a breach of its duty of good faith and fair dealing implied in its contractual license agreement with ISGN.

84.

Defendants' breach of the FORTRACS License has resulted in severe damage to ISGN in an amount to be determined at trial, but in no event less than the difference of the cost of a ten (10) user license and a forty (40) user license, i.e. $225,000.

85.

Further, Defendants' continued breach of the FORTRACS License will irreparably harm ISGN.  Therefore, this Court should temporarily and permanently enjoin Sterling from any further and continuing breach of that agreement.

## COUNT VI:  CONVERSION
## AGAINST ALL DEFENDANTS

86.

ISGN incorporates by reference each of the foregoing allegations as though fully set forth herein.

87.

ISGN owns full right, title, and interest in the ISGN Proprietary Information, including, but not limited to, the FORTRACS software.

88.

Defendants, upon information and belief, and as described in this Complaint, have intentionally and unlawfully taken possession of the ISGN Proprietary Information for their own use and benefit, depriving ISGN of exclusive use and enjoyment the ISGN Proprietary Information.

89.

Defendants' conduct was wrongful, unauthorized by ISGN, and unlawful.

90.

Defendants' actions constitute conversion of the ISGN Proprietary Information and have resulted in severe damage to ISGN in an amount to be determined at trial.

91.

Further, their continued conversion will irreparably harm ISGN.  Therefore, this Court should temporarily and permanently enjoin Sterling from any further and continuing conversion of the ISGN Proprietary Information.

COUNT VII:  TORTIOUS INTERFERENCE WITH
PROSPECTIVE AND EXISTING CONTRACTUAL RELATIONS
AGAINST ALL DEFENDANTS

92.

ISGN incorporates by reference each of the foregoing allegations as though fully set forth herein.

93.

ISGN has numerous contractual agreements with its customers related to ISGN's products and services.  ISGN also has bona fide business relationships and opportunities with potential customers and referral sources for ISGN's products and services.

94.

Defendants are strangers to these contractual agreements and relationships.

95.

Defendants have acted improperly, purposely, maliciously, and with an intent to injure ISGN, in marketing their infringing products and services to ISGN's existing and potential customers, as well as referral sources. Additionally, Defendants have defamed, maligned, and have made false representations about, ISGN's products and services to these customers and referral sources.

96.

Morgan, Schiff, Chetrit and Ebner had the right and ability to supervise Sterling's and 3M's unlawful actions, had a financial interest in these actions, and/or directed, controlled, ratified, participated in, or was the moving force behind that activity, and are personally liable therefore.

97.

Defendants' conduct constitutes tortious interference with ISGN's contractual and business relations.

98.

Defendants' tortious acts have resulted in severe damage to ISGN in an amount to be determined at trial.

99.

Further, Defendants' continued tortious interference will irreparably harm ISGN. Therefore, this Court should temporarily and permanently enjoin Defendants from any further and continuing tortious interference with ISGN's existing customers, potential customers, and referral sources.

### COUNT VIII: CIVIL CONSPIRACY
### AGAINST ALL DEFENDANTS

100.

ISGN incorporates by reference each of the foregoing allegations as though fully set forth herein.

101.

Sometime in the period between 2008 and the present, Sterling, Morgan, Schiff, Chetrit and Ebner agreed to infringe upon the ISGN Proprietary Information, including the FORTRACS software.

102.

In furtherance of the conspiracy, Morgan, Schiff, Chetrit and Ebner, upon information and belief, delivered to Sterling and 3M the ISGN Proprietary

Information, including a copy of the FORTRACS software, other confidential and proprietary information, and/or documentation of ISGN.

103.

Also, in furtherance of the conspiracy, Defendants collaborated to alter the licensed FORTRACS software and allow approximately thirty (30) unauthorized additional users to use the FORTRACS software for Sterling's business operations.

104.

In furthering their conspiracy, Defendants developed, marketed, and distributed the OLYMPUS and TOUCHPOINT infringing software.

105.

In furtherance of the conspiracy, Schiff, Chetrit, Ebner and 3M purchased the infringing OLYMPUS and TOUCHPOINT software, fully aware of: (1) Morgan's and Sterling's wrongful acts of stealing, copy and making unauthorized use of ISGN's Proprietary Information; and (2) this Court's TRO preventing, *inter alia*, Morgan and Sterling from assigning or selling, either directly or indirectly, the rights to or related proprietary information in any of ISGN's software. [DE 18].

106.

Defendants' purpose in engaging in this conspiracy was to harm ISGN by unfairly competing against it using the converted ISGN Proprietary Information

and financially benefit from marketing and distributing Sterling's and 3M's infringing software.

107.

Defendants' actions constitute the tort of civil conspiracy under Georgia law.

108.

Defendants' actions have resulted in severe damage to ISGN in an amount to be determined at trial.

109.

Allowing Defendants' conspiracy to continue will irreparably harm ISGN. Therefore, this Court should temporarily and permanently enjoin Defendants from all acts in furtherance of such conspiracy.

## COUNT IX: UNJUST ENRICHMENT / QUANTUM MERUIT AGAINST ALL DEFENDANTS

110.

ISGN incorporates by reference each of the foregoing allegations as though fully set forth herein.

111.

As described in this Complaint, Defendants intentionally, unlawfully, and in bad faith converted the ISGN Proprietary Information for themselves for the purpose of developing, marketing, and distributing the OLYMPUS and

2848723v2

TOUCHPOINT software. Sterling, Morgan, Schiff, Chetrit and Ebner also improperly copied, used, and reproduced the FORTRACS software for use in Sterling's and 3M's business operations.

112.

Morgan, Schiff, Chetrit and Ebner had the right and ability to supervise Sterling's and 3M's unlawful actions, had a financial interest in these actions, and/or directed, controlled, ratified, participated in, or was the moving force behind that activity, and are personally liable therefore.

113.

Defendants have financially benefited from their unauthorized use of the FORTRACS software, and have received or will receive revenue and profits from their sale and licensing of the infringing OLYMPUS and TOUCHPOINT software. Any such enrichment is unjust and should, in equity and good conscience, be returned to ISGN.

COUNT X:  EXPENSES OF LITIGATION UNDER O.C.G.A. § 13-6-11
AGAINST ALL DEFENDANTS

114.

ISGN incorporates by reference each of the foregoing allegations as though fully set forth herein.

115.

Defendants have acted in bad faith, have been stubbornly litigious, and have caused ISGN unnecessary trouble and expense.

116.

Hence, under O.C.G.A. § 13-6-11, ISGN should be awarded its litigation expenses in this action, including all costs of this action and reasonable attorneys' fees incurred.

<u>JURY DEMAND</u>

ISGN hereby demands a trial by jury on all issues set forth in the Complaint which may be tried before a jury.

<u>PRAYER FOR RELIEF</u>

ISGN respectfully requests an Order from the Court that provides for the following relief:

A.    Judgment in favor of ISGN and against Defendants on all counts of the Complaint;

B.    ISGN be awarded all actual, compensatory, and foreseeable and consequential damages, in the amount proven at trial;

C.    An accounting of Defendants' financial records, including Sterling's and 3M's corporate books, to determine the extent to which Defendants have

profited from their unlawful acts, awarding ISGN a disgorgement of those profits;

D.  All costs of this action be cast upon Defendants;

E.  ISGN be awarded augmented, exemplary, and punitive damages to the extent allowed by law against both Defendants in view of their willful, wanton, outrageous, and malicious misconduct;

F.  ISGN be awarded the reasonable attorneys' fees that it incurred in maintaining this civil action, as allowed by 17 U.S.C. §§ 505 and 1203(b)(5), O.C.G.A. § 10-1-760 *et seq.*, and O.C.G.A. § 13-6-11;

G.  Pre- and post-judgment interest at the legally allowable rate; and

H.  All such other and further relief as this Court deems just and appropriate.

Respectfully submitted, this 15th day of September, 2010.

ARNALL GOLDEN GREGORY LLP

s/Anuj Desai_____

Stephen M. Dorvee | GA Bar No. 226989
Richard A. Mitchell | GA Bar No. 513419
Anuj Desai | GA Bar No. 193889

171 17th Street NW, Suite 2100
Atlanta, Georgia 30363
404.873.8500 [TEL]
404.873.8501 [FAX]
stephen.dorvee@agg.com

*Attorneys for Plaintiff ISGN Corporation*

SALTZ MATKOV P.C.

Albert M. Saltz | ID No. 52931
Matthew D. Matkov | ID No. 93661

1171 Lancaster Avenue
Suite 101
Berwyn, Pennsylvania 19312
484.318.7225 [TEL]
484.318.[FAX]
mmatkov@saltzmatkov.com